VINCENZINA GOTTUSO ET AL. v. JOHN BAKER.

Argued June 1, 1909—Decided November 3, 1910.

1. Under our constitutional provision the title of an act is in the nature of a label by which the object of the act is displayed; it is not a table of contents or an index to everything that the statute enacts.

2. An act entitled "An act to provide for the better security of life and limb in case of fire in hotels and other buildings" (*Pamph. L.* 1899, *p.* 359) is not repealed as to tenement houses three stories high by the Tenement House act of 1904 (*Pamph. L., p.* 96.)

3. Where the legislature has enacted two statutes upon the same subject, effect should be given to both if possible, especially where this can be done by giving effect to the express repealer contained in the later act.

On defendant's rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices GARRISON and PARKER.

For the rule, *Randal B. Lewis* and *Michael Dunn.*

*Contra, Joseph H. Lefferts.*

· The opinion of the court was delivered by

GARRISON, J.    The plaintiffs, who are husband and wife, seek to recover from the defendant compensation for injuries received by them in escaping from a burning building in the city of Passaic in which they were dwelling, and which was owned by the defendant. The plaintiffs' case against the defendant, as far as the question of liability was concerned, was rested upon the act of March 24th, 1890, entitled "An act relative to fire escapes" (*Pamph. L., p.* 101), and upon the act of March 28th, 1899, entitled "An act for the better security of life and limb in cases of fire in hotels and other buildings." *Pamph. L., p.* 359. The first of these statutes requires that all buildings now or hereafter erected, in which twenty or more persons live above the first or ground floor, shall have one or more external wrought iron fire escapes, the number, dimensions and character of which shall be designated by the proper municipal board. The other of these statutes requires the owner of any hotel or lodging house or tenement house in which rooms or floors are let to numerous families, whenever any of such buildings can accommodate thirty or more individuals, and are three or more stories in height, to cause a rope and chain to be secured to the window casing of at least one window in each room above the second floor, of sufficient length to extend from the window to the ground or some suitable landing place. Pursuant to the provision of the act of 1890, the common council of the city of Passaic, some months after the approval of that act, passed an ordinance specifying the number, dimensions and character of the fire escapes to be used in the city under the requirements of that statute.

At the trial of the case the plaintiffs' proofs disclosed that the building in which they resided was a three-story brick building, with a store on the first floor, and two rooms in the rear thereof; that the second floor was divided into two suites of apartments with a common hall and stairway, each suite containing four rooms; and that the third floor was the counterpart of the second. It was further proved, on the part of the plaintiffs, that between thirty and forty persons were then living in the building; that the proprietor of the store resided in the two rooms on the first floor with his wife and brother; that at least three separate families lived in the apartments on the second and third floors, some of whom took boarders; and that some of these families did their cooking upon the premises. It was further proved on the part of the plaintiffs that the defendant had failed to protect his building against fire by installing the apparatus specified in the statutes of 1890 and 1899.

The foregoing facts being shown, the defendant at the close of the plaintiffs' case moved for a nonsuit upon the ground that the statute of 1899 was unconstitutional, and that the statutes on which the action was brought had been repealed. In ruling upon this motion the trial judge said: "I will hold in this case that the act of 1904, page 96, known as the Tenement House act, does not repeal the act of 1899, page 359." The correctness of this ruling is challenged by the third and fourth reasons for a new trial, viz., that the act of 1899 is unconstitutional and was repealed by the act of 1904.

The constitutional objection which is that the giving of a right of civil action as one of the means of securing the enforcement of the statute of 1899 exceeds the object expressed in the title of that act and renders the act itself twofold, is fully covered by what was said by this court upon this subject in the case of *Moore* v. *Burdett,* 33 *Vroom* 164: "In the interpretation of this constitutional provision, the *object* of a law must not be confused with its *product.* Every law is an exhibition of legislative activity directed to a particular end. This purposive direction implies the kind of activity put forth and the choice of the field for its display, but not the particulars

of the purpose or the means selected for its accomplishment. The former is the *object* of the law, the latter is its *product.* The 'object' of every law, by force of the constitution, must be single and be expressed in the title of the law; the product may be as diverse as the object requires and finds its expression in the terms of the enactment only. In fine, the title of an act is a label, not an index."

This leaves as the sole reason for a new trial that the court erred in refusing to hold that the act of 1899 was repealed by the act of 1904. Clearly, the earlier act was not repealed by the repealing clause of the later act, which is limited to "all acts and parts of acts inconsistent with this act," and there is no inconsistency between a statutory provision that tenements more than three stories high shall have exterior fire escapes of structural iron and one that requires tenements three stories high to be equipped with rope fire escapes. If there were any repugnancy therefore between the two acts, the earlier would fall under the express repealer contained in the later, and hence there is no room for repeal by implication. On the contrary, however, the provisions of the act of 1899 that we are asked to disregard are not repugnant to the act of 1904, or inconsistent with the provisions of that act, and hence if such earlier consistent provisions are to be disregarded, it is because the act of 1904 established the sole legislative rule upon the subject to the exclusion of all that had been previously enacted that was not embodied in its provisions. In fine, if the act of 1899 is no longer in force, it is because the legislature has framed a new and general rule covering the entire subject-matter, so that all earlier and different rules touching the same matter are to be discarded in favor of such later rule. *Harrington* v. *Jersey City,* 49 *Vroom* 610.

That such annulment of earlier legislation which, for brevity's sake may be termed repeal by substitution, is available when the later act contains express language limiting its repealing effect to such parts of earlier acts as are inconsistent with its provisions, seems to be settled in this court. The case of *Cortelyou* v. *Anderson,* 44 *Vroom* 427 (opinion by Mr. Justice Pitney, 1906), is directly in point, and in earlier cases the

same result had been reached without comment. Assuming, therefore, that the presence of an express repealer does not prevent repeal by substitution, still such express repealer is none the less one of the circumstances from which the judicial inference, which is the foundation of the rule, is to be drawn; hence some weight must be given to it before the conclusion can be reached that a statute is to be given a more far-reaching effect than the legislature seemed to think that it required. For such judicial inference is by the rule in question to be drawn by the court from all pertinent circumstances, one of which unquestionably may be the fact that the legislature has itself indicated that the laws it has in mind to repeal are such parts of earlier laws as cannot consistently run *pari passu* with the new. In order therefore that any earlier consistent law be supplanted by a later one, the relation between the two must be such that, to use the language of the case last cited, "it is not to be presumed that the legislature intended the two schemes of legislation to have vitality at the same time."

If, however, upon reading an earlier and a later act together and eliminating from the former all inconsistent provisions expressly repealed, it be found that the provisions of the earlier act that remain unrepealed are not only consistent with the provisions of the later act, but if added to such provisions cover an entire subject-matter which the provisions of the later act alone do not, it is not lightly to be inferred that the legislative purpose was that in the future a part only of such subject-matter should be within its regulation.

I am not suggesting that the legislature may not by the mere contraction of a subject-matter in a later act eliminate earlier consistent legislation if such later act evinces a clear purpose to establish a single rule upon the entire subject; what I am hinting at is that such a purpose can hardly be said to be clearly evinced in a case where the earlier and the later law may well stand together each with its separate and appropriate field of action.

Obviously, a good deal must depend upon the nature of the subject with which the legislature is dealing and the character of the provisions that are said to be repealed.

The case of *DeGinther* v. *New Jersey Home,* 29 *Vroom* 354, is an instructive one, not only because of Chancellor McGill's accurate statement of the law, but also because the rule was applied in that case to one of the very statutes upon which the plaintiffs in the present action relied, viz., the act of March 24th, 1890. In the case cited it was held that this statute repealed two earlier acts dealing with the same subject, viz., external fire escapes, because it was clearly the intention of the legislature to establish a new scheme for the whole regulation of that subject which, in order to be effective, required the substitution of the later for the earlier acts. "It is not," said Chancellor McGill, "strictly a repeal by implication, but a repeal because of the institution of a new scheme of control of the subject-matter treated of, which shall prevail to the exclusion, as discarded, of all matter in prior enactments on the subject which is not embraced within it."

This case not only illustrates the true rule and its correct application, but it also leads, in my judgment, to the conclusion that the act of 1890, which was thus substituted for those of 1882 and 1888, is, by force of the same rule, now superseded by the act of 1904, so far as external fire escapes for tenements are concerned. With respect, however, to the act of 1899, which is the only statute drawn under review by the reasons filed in this case, the situation is widely different. That act did not treat of external fire escapes at all; on the contrary, it dealt entirely with certain less effective and less expensive appliances that were to be kept inside of certain buildings, in each and every room, and it expressly provided that such appliances should be "independent of, or in addition to, the external iron fire escape or escapes that may be required by any law of this state." This act, moreover, applied in terms to a building three stories high. The act of 1904, on the contrary, treats of the construction of tenement houses, and in providing what features shall enter into such construction specifies "outside fire-proof stairwe,s," to be required, however, only in the case of tenements that are more than three stories high.

Each of these statutes, it is true, deals with the protection of life or limb of inmates of certain buildings, but not with the

same buildings or with the same or even with similar sorts of protection. If the protection afforded by the two acts had been of the same sort there might be some ground for the argument that such protection was withdrawn by the later act from those to whom the earlier act had extended it; but what conceivable ground is there for believing that because the more expensive structural fire escapes were not extended to three-story tenements the legislature intended to take from them such protection as they already had from the inexpensive rope and chain device? The cryptic saying that "from him that hath not, even that he hath shall be taken away from him," whatever its meaning may be in its own context, is a poor rule for the construction of remedial legislation.

Yet this is the rule we are urged to apply to the two remedial statutes now before us. For we are asked to say respecting the inmates of three-story tenements whose sole protection in case of fire was the inexpensive rope contrivance provided by the act of 1899 that because the greater protection of structural fire escapes was not given to them by the act of 1904 the legislature has taken away from them even the protection that they had. This has not the ring of sound law. On the contrary, the true canon applicable to the case before us and the most fundamental of all legal canons for the judicial construction of statutes is that where there are two statutes upon the same subject, effect shall be given to both, if possible.

Granting, if you choose, that "if possible" means no more than that a reasonable presumption must exist that both acts were intended to stand, the act of 1899, in so far as three-story tenements are concerned, must stand, notwithstanding the provisions of the later act concerning tenements of a greater height.

Judged by this canon the legislature in providing in 1904 a scheme of structural protection against fire to the inmates of tenements more than three stories high, omitted to extend this expensive system to the inmates of three-story tenements, not because they intended that the latter should be without protection from fire, but because they deemed that the protection they already had was reasonably adequate, and hence intended

that such protection should continue, and thereby the whole field of the fire protection of tenements be covered; those of two stories being given none; those of three stories being given rope fire escapes, and those of more than three stories external iron stairways.

That such a construction is a permissible one cannot be denied, that it is a reasonable one is hardly open to argument. That it is humane and accords with the legislative policy is in its favor, but beyond all these, such construction has the inestimable advantage of giving effect to all of the language of the legislature, and furthermore of giving effect to it in the precise manner that the legislature has expressly determined, viz., by repealing so much only of the earlier act as was inconsistent with the provisions of the later one. In view of these considerations, we can reach no other conclusion than that the trial court was right in holding that the act of 1904 did not absolve the defendant from providing his three-story tenement with the device required by the act of 1899.

This conclusion renders it unnecessary for us to determine whether it was the duty of the plaintiffs to show that the defendant's tenement was not within the definition of the Tenement House act, in order to avoid the application of that statute, or whether it was the duty of the defendant to show that his building was within such act in order to enable him to invoke its repealing effect. The question is one of some nicety, and in deciding the main question against the defendant, we have tacitly assumed the subordinate one in his favor.

For the reasons stated, the rule to show cause in this case is discharged, with costs.